**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

HOLLI DAVIS, Individually, and as
Parent and Guardian of
LUKE DAVIS, a minor,

                Plaintiff,

v.                                  CIVIL ACTION NO. 5:10-cv-00384

THE UNITED STATES OF AMERICA,

                Defendant.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed Plaintiffs' Motion for Partial Summary Judgement on Liability (Document 58) and the United States' Motion for Summary Judgment (Document 70). The Court has also reviewed the United States' Motion In Limine to Exclude Causation and Damage Opinions of Robert Allen Dein, MD, FACOG (Document 51). After careful consideration of the supporting memoranda and all written submissions relative thereto, the Court denies these motions.

*I. FACTUAL BACKGROUND & PROCEDURAL HISTORY*

Holli Davis was treated by Dr. Angel Rosas and his partners at Associates in Obstetrics and Gynecology during her pregnancy with her son, Luke Davis. On March 30, 2007, Plaintiff reported vaginal bleeding to her healthcare providers and on this date she was found to be pregnant. Plaintiff reported vaginal bleeding on at least three occasions through July 2007. On July 27, 2007, Plaintiff complained of an increased vaginal discharge, at which point she was informed by two sonographic technicians that her amniotic fluid was low. She was then given a nitrazine test to determine if she

had premature rupture of the membranes ("PROM"). That test was reported negative by Carolyn Spurlock, CNM.

On August 5, 2007, Plaintiff, at about twenty-four weeks gestation, went to the emergency room at Raleigh General Hospital complaining of vaginal bleeding. She was seen by Dr. Rosas. Dr. Rosas observed an ultrasound that was preformed by sonongrapher, Cassie Rife. The ultrasound revealed, as noted by Dr. Rosas, a mildly decreased amniotic fluid level for the gestational age. Plaintiff was given a nitrazine test, which was, again, negative. Dr. Rosas did not perform a Fern test, nor did he perform an amniocentesis with the installation of dye to test for PROM. She was held overnight for observation and released the next morning with pelvic rest orders, but no other limitations on her activity. Plaintiff was examined again on August 20, 2007. At this point, an ultrasound revealed oligohydramnios with an amniotic fluid index of 0.51. She was then transferred to Cabell Huntington Hospital for evaluation and management where she was treated by Dr. Chafin.

Upon being transferred from Raleigh General Hospital to Cabell Huntington Hospital, Plaintiff was diagnosed with having PROM. Her clinical medical records indicated on August 29, 2007, she had early chorioamnionitis ("chorio"). Chorioamnionitis is an inflammation of the fetal membranes due to a bacterial infection, which results from bacteria ascending into the uterus from the vagina. Dr. Chafin's pre-operative report, operative notes and post-operative notes indicated chorio. His report also indicated there were adherent nodules, pus and debris scattered throughout the endrometrial cavity.[1] However, it is also undisputed that the pathology reports indicated that Plaintiff did not have chorio. Plaintiff's and Defendant's experts disagree as to which is the proper portion of medical records to diagnose chorio. Luke Davis was born prematurely on August 29,

---

[1] This is an issue of dispute addressed in Defendant's motion for summary judgment.

2007, and was later diagnosed with cerebral palsy and other severe and permanent physical disabilities. These medical conditions are the basis of Plaintiff's claims.

On March 23, 2010, Plaintiff, Holli Davis, individually, and as Parent and Guardian of Luke Davis, a minor, filed a complaint against Defendant, United States of America, for negligence based on the care Plaintiff received from Dr. Angel Louis Rosas and Deborah Forst, within the scope of their employment with Associates in Obstetrics and Gynecology, which is an approved satellite delivery site of Community Health Systems ("CHS"). The claims are properly filed under the Federal Tort Claims Act ("FTCA")§§ 13 , 28 U.S.C. 46(b).[2] (Docket  1 & 5 ¶¶ 1-5).  As required, Plaintiffs filed an administrative tort claim with the United States Department of Health and Human Services ("DHHS") on July 13, 2009.  As of March 23, 2010,  DHHS had failed to respond to the administrative claim.

On April 25, 2011, Plaintiff moved for partial summary judgement as to liability  claiming an admission of the same.  Plaintiff contends that Dr. Rosas admitted  liability during his deposition, based on the following questions and answers:

> Q.   I do not want to be unfair to you, but can you give me a yes or no answer to this question, do you think that you made a mistake, *knowing what you know now* of letting her go on the 6th?
> A:   That is a hard question to answer.
> Q:   That's what this is for, is the hard questions.
> A:   Knowing what I know, what happened?
> Q:   Yes.
> A:   *Then the answer is probably yes to that*.

(Rosas Dep. 102:2-12) (emphasis added)

On May 3, 2011,  Defendant responded to Plaintiff's motion and argues that there is a

---

[2] Plaintiff's complaint misidentified Deborah Forst as Deborah "Frost"

3

genuine issue of material fact as to whether the deposition quoted *supra* was an admission. (Docket 63). Further, Defendant responds that admitting a mistake is not the same as admitting a breach of Dr. Rosas' applicable standard of care. *Id*. Finally, Defendant argues that Dr. Rosas' standard of care was fixed at the time the cause of action accrued, not years later. *Id*.

Defendant filed a cross motion for summary judgment on June 17, 2011 (Docket 70). The United States argues that Plaintiff cannot establish, by proper expert testimony, that any alleged breach of the standard of care was the proximate cause of, or caused a loss of chance with respect to, the alleged injuries and damages to Holli or Luke Davis because Plaintiff did not have chorio. *Id*. Essentially, Defendant's motion for summary judgement rests on their assertion that Plaintiff's expert can not establish proximate causation, which is an essential element of Plaintiff's claim. Plaintiff has responded that their expert's testimony and opinion does, in fact, raise a genuine issue of material fact as to causation. (Docket 79). This case is scheduled for a bench trial.

## *II. STANDARD OF REVIEW*

The well-established standard of review in consideration of a motion for summary judgment is that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c)(2) (2006); *see also Hunt v. Cromartie*, 526 U.S. 541, 549 (1999); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U .S. 242, 247 (1986). A "material fact" is a fact that might affect the outcome of a party's case. *See Anderson*, 477 U.S. at 248; *JKC Holding Co. LLC v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir.2001).

A "genuine" issue concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. *Id.* The moving party bears the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322-23. When determining whether there is an issue for trial, the Court must view all evidence in the light most favorable to the non-moving party. *North American Precast, Inc. v. General Cas. Co. of Wis.*, Civil No.02:04-1306, 2008 WL 906334, *3 (4th Cir. Mar. 31, 2008). The non-moving party must satisfy their burden of proof by offering more than a mere "scintilla of evidence" in support of their position. *Anderson*, 477 U.S. at 252. If the non-moving party fails to make a showing sufficient to establish the existence of an essential element, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23. If factual issues exist that can only be resolved by a trier of fact because they may reasonably be resolved in favor of either party, summary judgment is inappropriate. *Anderson*, 477 U.S. at 250.

When, as here, the Court is asked to consider cross-motions for summary judgment, the Court must review each motion separately on its own merits "to determine whether either of the parties deserves judgment as a matter of law." Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir.2003) (citing *Philip Morris Inc. v. Harshbarger*, 122 F.3d 58, 62 n. 4 (1st Cir.1997)).

### III. *APPLICABLE LAW*

This medical negligence action is brought pursuant to the terms and conditions of the FTCA. 28 U.S.C. §§ 1346(b) and 2671-2679; *Bellomy  v. United States*, 888 F. Supp. 760, 763-64 (S.D.

W. Va. 1995.) The FTCA requires the use of substantive law of the state where the alleged negligence took place, which, in this case, is West Virginia. *Bellomy*, 888 F. Supp at 763-64. Accordingly, this Court must apply the West Virginia Medical Professional Liability Act ("WVMPLA"), as it is applied by common law, which in pertinent part, requires a plaintiff in a medical negligence action to prove the following elements:

> (a) . . . an injury or death resulted from the failure of a health care provider to follow the accepted standard of care:
>
> (1) The health care provider failed to exercise that degree of care, skill and learning required or expected of a reasonable, prudent health care provider in the profession or class to which the health care provider belongs acting in the same or similar circumstances; and
>
> (2) Such failure was a proximate cause of the injury or death.

W. Va. Code § 55-7B-3 (Repl. Vol. 2008).

Further, proof of medical negligence requires expert testimony. *Bellomy,* 888 F. Supp at 764. However, expert testimony is not always needed, such as when a "physician's lack of care or skills is so great and gross that expert testimony is unnecessary." *Id.* at 766.

### IV. PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff moves for partial summary judgment as to liability. Plaintiff's motion presents the Court with only one issue. Clearly, Dr. Rosas owed Plaintiffs a duty of care to act as a "prudent health care provider [would] in the profession or class to which [he] belongs acting in the same or similar circumstances." W.Va. Code § 55-7B-3.

Viewing the facts in the light most favorable to Defendant, the Court must determine if Dr. Rosas statement was an admission of a breach of his duty of care which would establish liability on

the part of Defendant. Plaintiff must show that there is no genuine issue of material fact regarding whether Dr. Rosas' statement was an admission of his breach of the applicable standard of care owed to Plaintiff.

Dr. Rosas' alleged admission is essentially that if he knew the full medical record of Plaintiff at the time of the alleged negligent act, as he did at his deposition, he "probably" would not have sent Plaintiff home on August 6, 2011. Viewing the facts in the light most favorable to Defendant, Dr. Rosas' statement, "the answer is probably yes," leaves open a genuine issue of material fact as to whether his statement is an admission. Plaintiff argues that "[o]ur words and our deeds matter." (Docket 69). The Court agrees. However, Dr. Rosas' statement that he "probably" would have done something different does not, in and of itself, necessarily establish a breach of the applicable standard of care.

Dr. Rosas' alleged admission to his mistake was based on information that was in Plaintiff's medical records. Plaintiff claims that she told Dr. Rosas that she was experiencing serious vaginal leakage during the period she was under his care. However, Dr. Rosas claims that he did not know of these complaints until after the alleged negligent acts took place. The fact of whether Dr. Rosas knew the seriousness of Plaintiff's vaginal leakage in late July and August of 2007 is undoubtedly a genuine issue to be resolved by the trier of fact. Hindsight is 20-20. Even if this Court were to accept Dr. Rosas's statement as an admission, whether he breached his applicable standard of care is to be judged at the time of his alleged negligent acts. *Bellomy*, 888 F. Supp. at 763-64 (quoting Syl. Pt. 2, in part, Schroeder v. Adkins, 141 S.E.2d 352 (W. Va. 1965)). Here, the applicable time frame was August 5 & 6, 2007. Dr. Rosas' proffered statement of admission was based on what he admits to knowing at the time of the deposition, not on the date he made the decision to discharge

7

Plaintiff.

Viewing the facts in the light most favorable to Defendant, the Court finds that there is a genuine issue of material fact as to whether Dr. Rosas' statement, given at deposition, was an admission of a breach of the standard of care. Accordingly, Plaintiff is not entitled to partial summary judgment as to liability.

### *V. DEFENDANT'S MOTION IN LIMINE*

Defendant moves this Court to exclude the testimony of Plaintiffs' expert witness, Dr Dein, on the basis that his opinions lack any factual foundation in the record. Dr. Dein opines that Plaintiff developed chorio as a result of Dr. Rosas' failure to diagnose PROM and that this failure led to the premature delivery of Luke, who developed cerebral palsy. The issue is whether Dr. Dein's testimony meets the admissibility requirements of expert testimony under Federal Rule of Evidence 702, which states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) *the testimony is based upon sufficient facts or data*, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702 (emphasis added to the prong Defendant challenges).

Fed. R. Evid. 702 was amended after the *Daubert* decision to allow district courts to act as "gatekeepers" to ensure "that any and all scientific testimony ... is not only relevant, but reliable."*Daubert v. Merrell Dow Pharmaceuticals,* 509 U.S. 579, 589 (1993). Ultimately, this case is slated for a bench trial, which makes for "less [of a] need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself." *United States v. Brown*, 415 F.3d 1257,

1269 (11th Cir.2005). Further, this Court is better equipped to weigh the probative value of Dr. Dein's expert testimony. *Traxy North America, Llc. v. Concept Mining, Inc.*,--- F.Supp.2d ----, Civil No. 1:10CV00029., 2011 WL 1979385, at *1 (W.D.Va. 2011).

The crux of Defendant's argument to exclude the testimony of Dr. Dein is that he did not base his opinion on sufficient data or facts. Specifically, it is that his testimony "is [not] more than [a] subjective belief or unsupported speculation." *Bourne v. E.I. Dupont De Nemours and Co., Inc.*, 189 F. Supp. 2d 482, 495 (S.D. W. Va. 2002), aff'd 85 Fed. Appx. 964 (4th Cir. 2004) (This decision discusses the *Daubert* standards.)

Defendant argues that pathology reports are the only conclusive medical evidence upon which to base an expert opinion diagnosis of chorio. However, Plaintiff's clinical medical records refer on several occasions to a diagnosis of chorio. Essentially, this goes to the weight of the expert testimony as opposed to its admissibility. The Court finds that Dr. Dein's expert testimony is based on sufficient facts and data in Plaintiff's medical records to meet the admissibility requirement under Fed. R. Evid. 702. Accordingly, the Court denies Defendant's motion in limine to exclude Dr. Dein's expert testimony.

## V. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant moves for summary judgment based on the premise that Plaintiff can not establish causation. This case essentially comes down to a battle of medical experts, who disagree as to whether or not Plaintiff had chorio, whether or not Dr. Rosas was negligent in his care of Plaintiff, and whether the alleged negligence was the proximate cause of Plaintiff's damage. In light of the ruling on Defendant's motion in limine *supra*, very little discussion is needed to support a finding regarding the existence of a genuine issue of material fact and to dispense with Defendant's motion

for summary judgment.

Defendant argues that pathology tests conclusively established that Plaintiff did not have chorio. Plaintiff argues that diagnostic findings from Plaintiff's clinical medical records established that she did have chorio. The conflict of medical records and the related expert testimony on this issue create a genuine issue of material fact.

Viewing the facts in a light most favorable to Plaintiff, the Court finds that there is a genuine issue of material fact as to whether Holli Davis had chorio and whether any negligence on the part of Dr. Rosas was the proximate cause of Plaintiff's damage. Accordingly, Defendant is not entitled to summary judgment.

## *VI. CONCLUSION*

Therefore, the Court hereby **ORDERS** that Plaintiffs' Motion for Partial Summary Judgment (Document 58) be **DENIED**. Further, the Court **ORDERS** that the United States' Motion for Summary Judgment (Document 70) be **DENIED**. Lastly, the Court **ORDERS** that the United States' Motion in Limine to Exclude Causation and Damage Opinions of Robert Allen Dein, MD, FACOG (Document 51) be **DENIED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party. ENTER: September 2, 2011

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA